IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 15-00134-CG |
| | ) | |
| RAYFIELD SNOWDEN | ) | |
| | ) | |
| | ) | |

## ORDER

This matter is before the Court on Rayfield Snowden's (hereinafter, Defendant) motion to suppress the evidence obtained during the search of his vehicle (Doc. 14) and the United States' response (Doc. 17).  For the reasons stated herein, Defendant's motion to suppress is due to be **GRANTED**.

I.  BACKGROUND

The following facts were established at the suppression hearing in this matter:

On April 13, 2015, Defendant was traveling along U.S. Highway 98 in Mobile County, Alabama.  Alabama State Trooper George Roe conducted a traffic stop due to Defendant traveling in excess of the posted speed limit.  Upon approaching the vehicle, Trooper Roe observed normal items within the car, such as a suit hanging from the rear window, an overnight bag in the back seat, and cell phone in the middle console.  Trooper Roe asked Defendant for his insurance and registration.  When Defendant opened his glove box, Trooper Roe observed a prescription pill

bottle. Trooper Roe asked Defendant to leave his vehicle and join him in the cruiser. After Defendant got out of his vehicle, Trooper Roe performed a brief pat down of Defendant for officer safety. Trooper Roe felt what appeared to be a roll of money in Defendant's pocket. When asked the amount, Defendant stated that he had $600 – $700 dollars.

While in Trooper Roe's cruiser, Defendant exhibited nervous behavior. Trooper Roe described defendant's behavior as frigid and uncomfortable in the seat. Defendant informed Trooper Roe that he was returning home from visiting a sick friend in Houston, Texas and lady friend in Mesquite, Texas. Trooper Roe ran Defendant's information, vehicle information, and insurance information through law enforcement databases and found no reason to further detain Defendant. Trooper Roe then issued Defendant a written warning for speeding and returned all of Defendant's information to him. As Defendant reached over to shake Trooper Roe's hand, end the encounter, and exit the cruiser, Trooper Roe began further questioning Defendant. Trooper Roe asked to count the money Defendant had in his pocket. Trooper Roe discovered that Defendant had approximately $1,200 instead of the amount initially represented. Based on this discrepancy, Trooper Roe asked Defendant whether he had any additional money or drugs in his vehicle. Defendant stated that he did not and volunteered verbal consent to search the vehicle.

Trooper Roe requested additional officer support to assist with the search. Upon searching the vehicle, troopers found two packages of cocaine, in the center,

headliner console.  Further search of the vehicle revealed a kilo of cocaine inside a hidden compartment access door.  Trooper Roe arrested Defendant.  Defendant was subsequently indicted with two counts of violating Title 21, United States Code, Section 841(a)(1).

## II.   ANALYSIS

The issue is whether Trooper Roe's prolonged detention of Defendant and investigation into matters unrelated to the initial traffic stop are supported by reasonable suspicion.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Under the exclusionary rule, evidence derived from a search that violates the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure.  United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003).

In a recent opinion, the United States Supreme Court re-stated the relevant law and expanded on the matter at issue:

> A seizure for a traffic violation justifies a police investigation of that violation.  "[A] relatively brief encounter", a routine traffic stop is "more analogous to a so-called 'Terry stop' . . . than a formal arrest." Knowles v. Iowa, 525 U.S. 113, 117 (1998) (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984), in turn citing Terry v. Ohio, 392 U.S. 1 (1968)).  See also Arizona v. Johnson, 555 U.S. 323, 330 (2009). Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, Caballes, 543 U.S., at 407, and attend to related safety concerns, infra, at 6–7.  See also United States v. Sharpe, 470 U.S. 675, 685 (1985); Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the

3

>detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Ibid. See also Caballes, 543 U.S., at 407.  Authority for the seizure thus ends when tasks tied to the traffic infraction are–or reasonably should have been–completed. See Sharpe, 470 U.S., at 686 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").
>
>. . .
>
>The seizure remains lawful only "so long as [unrelated] inquires do not measurably extend the duration of the stop." 555 U.S., at 333. . . . An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop.  But . . . [an officer] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

Rodriguez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1614–615 (2015).  Thus, absent articulable reasonable suspicion of criminal activity, detention beyond what is necessary to complete the traffic stop is unconstitutional. Id. at 1616.

In determining whether reasonable suspicion exits, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 271 (2002) (internal citation omitted); United States v. Cortez, 449 U.S. 411, 417 (1981).  "It is clear that an inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity." United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003) (internal citations and quotations omitted).  "Like the determination of probable cause discussed in Illinois v. Gates, the relevant inquiry in evaluating the presence of reasonable suspicion is '"not whether particular conduct is "innocent" or

4

"guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" United States v. Tapia, 912 F.2d 1367, 1370–371 (11th Cir. 1990) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).  Objectively reasonable suspicion of illegal activity is justified under circumstances such as no proof of ownership of the vehicle, no proof of authority to operate the vehicle, and inconsistent statements about the destination.  United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999).  Furthermore, nervous behavior, coupled with additional factors, can form the basis of reasonable suspicion that criminal activity is afoot.  See, e.g., United States v. Sims, 385 F.3d 1347, 1354–355 (11th Cir. 2004) (finding reasonable suspicion based on nervous conduct, a prior history of drugs, and a questionable story about the defendant's travel plans); United States v. Payne, 2008 WL 4671778, at *3 (M.D. Ala. Oct. 21, 2008) (finding reasonable suspicion where the defendant exhibited a nervous demeanor, the officer smelled marijuana emanating from the vehicle, and observed "blunt powder" in the car).

 Trooper Roe lawfully conducted a routine stop of Defendant's vehicle for speeding.  Defendant complied with the stop, provided all requested information, and joined Trooper Roe in his cruiser.  Upon running Defendant's information, Trooper Roe found that Defendant had no outstanding warrants or criminal history and that the car was registered to Defendant.  Trooper Roe then issued Defendant a written warning for speeding and returned all documentation to Defendant.  At this point the seizure's mission was accomplished and further investigation should have ceased.  Defendant attempted to terminate the encounter and exit the cruiser.

Trooper Roe, however, began questioning Defendant as to the amount of money he possessed, which prolonged his detention.  The court finds that Trooper Roe's additional questions measurably extended the tolerable duration of the stop in such a way that violates the Fourth Amendment.

The government argues that Defendant's prolonged detention is justified by the reasonable suspicion Trooper Roe formed before returning Defendant's documentation.  More specifically, the government contends that Defendant's nervousness, the prescription pill bottle in Defendant's glove box, the reasonably large sum of cash Defendant had on his person, and the discrepancy about the amount of money Defendant possessed provides a basis for reasonable suspicion.  The Court disagrees.

Trooper Roe testified that he observed normal travel items in Defendant's car.  Further, upon questioning, Defendant provided a plausible itinerary of his travel.  Although Trooper Roe indicated that Defendant exhibited nervous behavior, Trooper Roe testified that he uncovered no evidence whatsoever of any crime before giving Defendant's documentation back to him and completing the traffic stop.  This is not a case where Defendant was driving a rented vehicle, had a criminal history for trafficking drugs, or was traveling along a well-known drug corridor.  It is reasonable to think that an individual would be nervous due to a police encounter.  And it is reasonable to think that an individual's nervousness would be heightened when he is asked to join an officer in his cruiser.  Moreover, Trooper Roe did not discover the discrepancy in the amount of money Defendant possessed until after

6

the initial stop was completed.  Therefore, it is not a factor to consider in deciding whether the prolonged stop was justified by reasonable suspicion. Nor did the trooper explain why possession of a prescription pill bottle in the name of the driver would arouse suspicion of illegal activity.

In conclusion, the prolonged detention of Defendant failed to comport with the requirements of the Fourth Amendment because Trooper Roe failed to articulate a particularized suspicion that criminal activity was afoot before the initial traffic stop with Defendant was completed.

Based on the foregoing, Defendant's motion to suppress (Doc. 14) is **GRANTED.**

**DONE and ORDERED** this 26th day of August, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE